Beverly against Abbott Laboratories Good morning. May I please report? My name is Rebecca Kaiser. I'm one of the We're here this morning appealing the District Court's order granting Abbott Laboratories' motion to enforce a purported settlement agreement. We respectfully contend that the order was unreasonable for two main reasons. First, there was lack of meeting of the minds on essential material terms to the purported settlement agreement. In other words, this purported settlement agreement leaves out too many essential provisions to be enforceable. Second, there's objective evidence that the settlement agreement was not intended to be the final binding agreement between the parties. I'll first address the material terms that were made. Now, so I'm interested in what you think, forgetting all the written terms that Abbott later sent, do you think it would have been proper after the apparent agreement in the District Court and Abbott sends its email saying, okay, we accept, and your lawyer sends the email saying, oh, terrific, you're so wonderful, do you think after all of that it would have been fine for Abbott then to send a check in which Abbott unilaterally declared that 50% of the proceeds represented back pay, 50% represented damages, we have withheld taxes accordingly, here's the check for the balance. Do you think that would have been proper? I'm going to ask Abbott the same question. I don't think so, Your Honor, and one of the reasons why the settlement amount, which I will refer to due to confidentiality reasons as the purported settlement amount. No, the settlement amount is not confidential. Abbott filed a motion to keep these documents under seal and we denied it because the law of this circuit says that when a settlement comes into litigation, it is not confidential. None of it is confidential. The amount of $210,000 is on the public record right now. Fair enough, Your Honor. Well, you know, there are other material terms aside from allocation. Allocation is a big part of it. That would directly affect the amount of money that Ms. Beverly would get. I'm not interested in the other terms, right? Okay. I'm just trying to pin down what the tax consequences were because the parties have talked back and forth about the tax consequences. That is, to phrase this in terms of standard contract law, if Beverly thought the settlement was for $210,000 net and Abbott thought the settlement was for $210,000 gross, then there's no agreement. It's like your classic case of the two ships peerless where the parties didn't agree on which peerless was carrying the goods. But if the parties agreed that it was going to be $210,000 net of taxes, then perhaps there was enough for Abbott to say, here's our guess about taxes, we've paid the IRS, and if you disagree with us, you go work this out with the tax authorities. I'm trying to figure out which kind of agreement we have here or allegedly had here. And her point is that there was no agreement as to that, Your Honor. Obviously, based on what happened after the district court enforced the settlement agreement, Abbott thought that it was supposed to be less taxes. So the amount that Ms. Beverly received was 75% of that $210,000. Could she have gone back and said, I wanted the whole thing? Maybe, perhaps. But at that point, again, because there was no other agreement on other things, which do directly affect that amount of money. For example, the timing and method of payment was not agreed upon. Ms. Beverly didn't know if she'd get $210,000 in a lump sum the day after the mediation. She didn't know if she'd get it over the course of 10 years. There was no agreement as to that. And, of course, a check in hand the next day is worth a lot more than several smaller checks over the course of a period of time. And the evidence, again, showing what Abbott did give to Ms. Beverly does show that there was no agreement as to the lump sum versus the taxable amount. Another material term that wasn't agreed upon that directly affects whether or not that settlement amount was acceptable to either party was the fact that there was no agreement as to Ms. Beverly's job status after an alleged agreement. This is an employment discrimination case. A check for $210,000 plus someone's job back is worth a lot more than a check for $210,000, plus no job, which is worth even more than a check for $210,000, plus being barred from ever being employed by Abbott ever again. Another material term that was missing was any sort of waiver or release. This court has noted in Higbee that, especially from the defendant's perspective, a waiver or release is one of the most important, if not the most important material term to a settlement agreement. In this case, this document that Abbott is seeking to enforce reads that Beverly offers or Beverly demands $210 to resolve, quote, this matter. Well, what does this matter? Ms. Beverly had several claims against Abbott. Her husband, her co-plaintiff, also had several claims against Abbott. It doesn't show what they're resolving or whether or not Ms. Beverly could sue Abbott in the future for other acts of discrimination or anything else that could happen. There were also non-disclosure and non-disparagement provisions in the draft settlement agreement that came later that were not discussed or agreed upon at the mediation. Secondly, there's no objective manifestation of an intent to be bound by this note as a formal, binding, final agreement, and that's evidenced by the draft settlement agreement that came later. That is objective evidence that the first document was not intended to be the binding, final agreement, again because there are additional material terms listed, including the waiver that Abbott deemed so important as to there not have been an agreement without it. Abbott attempts to analogize this case to Pompeo. This language, the proposed draft agreement by plaintiff, has in the last paragraph given 21 days to consider the terms of the agreement and to decide whether to sign it. And the email that was sent was sent before the client knew. I mean, the client wasn't aware and hadn't been advised right before the email was sent. That is correct. And that 21-day consideration period and 7-day revocation period in the draft agreement also show that the original, I'll call it the note, wasn't intended to be the final document. Now, Abbott tries to analogize this case to Pompeo, which is a district court decision that's not binding on this court. Pompeo is very different from this case. In Pompeo, the parties came on the record and said, we have agreed to the final material terms. We understand that this is a valid settlement agreement we've entered into. In Pompeo, however, the plaintiff argued that because the final draft agreement, which he did not sign, contained a revocation period and a consideration period, that he was entitled to those periods. Judge Amy St. Eve ruled that because he never signed the final agreement, that he was not entitled to those periods of time. Counsel, maybe I'm missing this. Earlier on, did you indicate that everyone knew what the material issues were? No, Your Honor, not at all. None of them were agreed upon, aside from, supposedly, if you want to argue the amount, the $210,000. Nothing was ever agreed upon at the mediation. And in this handwritten note, it says, both parties commit that their offer and demand will remain open until July 22nd. That's correct. I believe that was four or five days after the mediation. And I would argue that the offer and demand are simply starting points. Illinois courts have held that agreements can be reached in stages, and this was just a starting point for further negotiations, the demand. I believe that Ms. Beverly kept her demand open so as not to raise the demand, but that was not meant for her to be bound by that, to accept that $210,000 under any and all conditions. And going back to Pompeo, Ms. Beverly is not arguing that she is entitled to a revocation period or consideration period, but simply that it's evidence that the first document was not intended to be final and binding. Although it is counterintuitive, if you really think about it in a practical sense, that if Ms. Beverly had signed the final draft agreement that she had not agreed to, that she could get out of it seven days later. Instead, she was up front. She acted in good faith by saying the day after the mediation, no, I do not want to settle this case. I see that my light is on, so I will reserve the rest of my time for rebuttal unless the court has further questions at this time. Thank you. Thank you, Ms. Kizer. Mr. Klinghofer. May it please the court, my name is John Klinghofer, and I, together with my colleague, Amanda Penabad, are here representing Abbott Laboratories, the Appellee in this matter. To answer the panel's question with respect to whether it would have been all right for my client to issue a check the day after the mediation, or Not the day after the mediation, right? After the mediation, the parties are still apart. That's right. The day after Abbott then sends the, we accept, right, we agree to pay $210,000 email. Which, by the way The email comes back saying, great, you're a wonderful person, and kind to your mother, right? And could the next day, Abbott have sent a check saying, now here, we're finishing our part of this settlement. Here's the check for $175,000. Please note that we remitted the rest of it to the Internal Revenue Service. The answer, yeah. Which, by the way, was the day after the mediation. The answer is yes, we could have. And the reason we didn't is there was, I think, a mutual Why are you confident that the parties, in agreeing on a number, agreed that it was a post-tax number, a pre-tax number, sorry, rather than a post-tax number? Well, I think the answer, why I'm confident, I think the better answer is why the judge was reasonable in ruling in that way, because we're dealing with an abuse of discretion standard here. And the answer isn't whether he got it right or whether he got it wrong. It's whether or not his ruling was reasonable. Well, did the parties discuss this question? District Judge did not find that the parties, at least as I read his opinion, District Judge did not find that the parties had discussed and agreed on whether this $210,000 number was before or after taxes. I think based on the documents in front of him, the judge reasonably concluded that it was a before-tax number. Well, and how is that? That's what we're trying to get to. What is it that he actually says that addresses that? Because we understand you want us to use a reasonableness standard. That's the standard we need to use, but we have to know the reason. The reason. You know what I mean? What is the basis for saying it's pre-tax? There's nothing clear in the order itself which articulates his reasoning why he came to that conclusion. Then how can we judge whether or not it was an abuse of discretion if we can't discern what the basis for the reason is? I think the reason would be is we're dealing with an employment discrimination suit in which wages were claimed and emotional distress damage was claimed, and that's the only damages that were claimed in this case, and the judge undoubtedly was aware of that. We have a situation where the parties agree in writing to resolve the dispute for a payment of $210,000. Again, the only dispute is alleged loss of wages. And that just leaves ambiguous the question whether that means $210,000 in hand to the plaintiff or $210,000 leaving Abbott's coffers, and those are different numbers. I don't think it was unreasonable for the judge to rule that they weren't. Unreasonableness is not in the abstract, as Judge Williams says. It has to be based on record evidence. Was there record evidence that this question, the gross versus net question, had been discussed by the parties and resolved? There was in the record, yes, in our opening paper, our motion to enforce in the memorandum in support, there was a footnote indicating that the parties had discussed allocation and that we intended to split. Did the judge then proceed to get evidence in the record about that? Since footnotes and briefs are not evidence in the record. The judge did not and did not articulate why. Right. And there was no, in the response, there was no reference to the footnote, right? Yeah. They never argued that allocation was even a material term to the agreement. There was never an argument before the lower court that the taxability, whether or not it was going to be allocated, was a material term that was missing from the agreement. The judge never considered that argument because it was never made to him. Was it material to Abbott? Was it material to Abbott? Was it material to Abbott whether it was taxability? Allocation. But we believe we had an obligation to withhold taxes from the portion of that payment. An obligation to the federal government? That's correct. All right. And what do you typically do in these cases when you settle cases? This isn't the first case that Abbott's ever settled. That's correct. You always then withhold, right? We withhold when there's a claim for wages. We do. Every time. We would comply with our legal obligation every time. That's correct. And the situation here is there was clearly a ---- These are trust fund taxes. So the managers of Abbott would be greatly interested in compliance. There was an anticipation that there would be a formal agreement here. It didn't happen. That's not unlike the number of cases cited in the judge's opinion where a formal agreement wasn't reached after the agreement was here. So I just want to get ---- So you do the footnote that you're saying that the plaintiff never responded to the footnote. That's correct. That's right. That's right, Your Honor. There was nowhere, never before, in the briefing on the motion to enforce, did they ever talk about this is pre-tax, this is post-tax, we don't know. And then the court then didn't, in its opinion, which is problematic for you, say since there was no counter position, the court assumes that this would be taxable. That's exactly right. That's right. And a matter of fact, in a minute order later in the docket, the judge articulates that in a motion to amend his order, modify his order to have us hold the settlement amount rather than plaintiff's counsel, notes in the record that as far as the record can see, plaintiff has never articulated that they want it allocated in any different manner. And that was the first time the judge talked about taxability. That's a different question. Whether it should be allocated in a different manner is a question different from whether the settlement was for gross or net. No, I understand your concern. I understand. I think it's clear what the judge's intentions were based on the case that we're dealing with. And I think from that perspective, there clearly was, under Illinois law, an offer, an acceptance, a meeting of the minds. For that reason, the judge clearly didn't abuse its discretion in finding it. And so let me just ask you just as a, so this particular plaintiff's counsel, had you ever had agreements with them before, settlement agreements in employment cases? There were three sets of counsel in this case, and we may have had an agreement with the first one, but not the one who engaged in the settlement. No, I'm just saying, generally speaking, these counsel, because you're saying, of course, you knew that the income would be taxable, because that's your practice at Abbott, pretty much on the settlement. It will be wages if it's this kind of wage employment case. Even if it's emotional distress, it's taxable. Right. But I mean, I'm just saying, I'm just wondering, these particular counsel you were dealing with, they don't necessarily have the same knowledge that the Abbott people have, and in terms of advising their clients, might not. I don't think that's the case. I think Mr. Ehrlich, Ms. Hubbard, all were experienced labor counsel. When you say 210, then they knew 210 meant less taxes. Yeah. We have an agreement to pay someone $100,000. Who was going to pay the taxes? Who would pay the taxes, actually? We were obligated to pay our portion of the payroll taxes. Yeah, and when you do most written settlement agreements, you lay that out, right? We often do to avoid this situation. Exactly. We try to do. Precisely. We try to do. Okay. I'm running out of time, but I'll quickly say, again, even if allocation had been raised by the plaintiff as a material term that was missing before the low court, the court would have been reasonable in not finding that it was a material term. It's an issue of implementation from our perspective. So your point of view, getting back to my brother, Judge Kaney, it's immaterial to you whether it's taxable or not taxable. That's exactly right. I mean, the more that's wages from our perspective, the worse it is for my client, but we have an obligation to pay the government what it's entitled to and what we're legally required to. So, yeah, it's immaterial. It's an implementation issue. It's not whether or not there was an enforceable agreement, and there was, and the judge was reasonable and correct in finding that there was. And as far as the reliance on this draft agreement, there was one sent before the mediation. It was a draft agreement sent after the mediation, all containing the terms. The fact that, again, we didn't enter into it a formal agreement, like all of the other cases cited in the opinion, is an evidence that there wasn't an agreement. The plaintiff did articulate a number of what they contend were material terms, but all the terms that were articulated both in the briefing to the lower court and here, they inert to Abbott's benefit. If Abbott doesn't believe they're material, no one should believe they're material. All Abbott wanted to do was end the case. And when it sent the email the day following the mediation saying, we accept your client's offer to pay $210,000 plus the cost of mediation in return for you resolving the case, which the judge reasonably concluded was dismissing the case, that's what we had. All that's here, the only reason for this appeal, is that Ms. Beverly wants not to comply with her offer that she agreed to remain open and wishes to get out of it and renegotiate. But there was an agreement, and the judge was correct and reasonable in determining those agreements. Thank you for your time. Thank you, Mr. Klinghoffer. Anything further, Ms. Kaiser? With respect to the allocation argument, Judge Chang did consider allocation in his ruling. It was listed in the draft agreement, which is part of the record, and as Mr. Klinghoffer noted, it was mentioned in defendant's brief. In the motion to enforce, Mr. Klinghoffer and I have it does say that the parties discussed allocation. Ms. Beverly staunchly disagrees. There's no supported evidence saying that that was discussed. Well, there's no evidence, but maybe the reason there's no evidence is because your client didn't contest that assertion. Well, she contested it in her appellate brief. Your appellate brief is too late to contest an assertion made in the district court. One possibility is that the argument that there is a material difference between the gross and net possibilities has simply not been preserved in the district court. It's hard to blame the district court for not opening up the evidentiary record and taking testimony if the parties don't contest an issue in the district court. In our briefs in the district court, we listed a bunch of material terms that weren't agreed to, and even though we didn't specifically bring up allocation, we didn't mean that list to be exhaustive, just illustrative. And again, allocation was obviously something that Judge Chang considered because it was in the documents. But even if we do say that the parties did agree to a certain allocation that Abbott asserts they agreed to, that wasn't the allocation that Abbott used when they wrote the checks. The allocation listed in the lower court was a portion to Ms. Beverly for back pay, a portion for damages, and a portion to her attorney. Those aren't how the checks went. Thank you, Counsel. Thank you, Your Honor. The case is taken under advisement.